UNITED STATES DISTRICT COURT

DISTRICT OF RHODE ISLAND

| | |
|---|---|
| FREDERICK V. VICARIO,<br>Plaintiff<br><br>V.<br><br>UNUMPROVIDENT CORPORATION, AND PAUL REVERE LIFE INSURANCE COMPANY,<br>Defendants | CIVIL ACTION NO. CA 05 469 T |

**DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)**

Defendants UnumProvident Corporation and The Paul Revere Life Insurance Company ("Defendants"), move this Court to dismiss plaintiff Frederick V. Vicario's Complaint pursuant to Fed. R. Civ. Pro. 12(b)(6) for failure to state a claim upon which relief may be granted.

The grounds for this motion are fully set forth in the accompanying Memorandum of Law, and can be summarized as follows:

These same parties have litigated AND SETTLED prior litigation pertaining the same disability insurance policy named in the present lawsuit. As part of the settlement of that matter, Vicario was paid a sum of money in return for which he executed a Settlement Agreement and General Release. Pursuant to that Agreement, Vicario released all rights and claims under the subject disability policy and agreed that it would be null and void as of September 2000. Consequently, Vicario does not have an enforceable contract on which to assert a claim for breach of contract (Count I) or bad faith (Count IV). In addition, because Vicario cannot show, given the facts alleged in the complaint, reasonable or justifiable reliance on any actions by

Defendants after he executed the General Release, he cannot recover for reliance (Count II) or estoppel (Count III).

WHEREFORE, for the reasons set forth in the accompanying memorandum of law, the Complaint should be dismissed in its entirety.

UNUMPROVIDENT CORPORATION,
AND PAUL REVERE LIFE INSURANCE
COMPANY

By their attorneys,

Joan O. Vorster, Esq.
RI #5784
Mirick, O'Connell, DeMallie & Lougee, LLP
100 Front Street
Worcester, MA 01608-1477
Phone: (508) 791-8500
Fax: (508) 791-8502

Richard E. Kirby, Esq. (JOV)
RI #3780
Macktaz, Keefer & Kirby
The Aldrich Building
72 Pine Street
Providence, RI 02903
Phone: (401) 272-5300
Fax: (401) 331-7454

Dated:

CERTIFICATE OF SERVICE

I, Joan O. Vorster, hereby certify that I have this day served a copy of the foregoing document, by mailing a copy, first class mail, postage prepaid, to J. Scott Kilpatrick, Chisholm, Chisholm & Kilpatrick. LLP, One Turks Head Place, Suite 1313, Providence, RI 02903.

Joan O. Vorster, Esq.

Dated: 12 · 19 · 05

UNITED STATES DISTRICT COURT

DISTRICT OF RHODE ISLAND

| | |
|---|---|
| FREDERICK V. VICARIO,<br>Plaintiff<br><br>V.<br><br>UNUMPROVIDENT CORPORATION, AND PAUL REVERE LIFE INSURANCE COMPANY,<br>Defendants | CIVIL ACTION NO. CA 05 469 T |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS**

NATURE AND STATUS OF PROCEEDINGS

In this case, plaintiff Frederick V. Vicario ("Vicario") seeks to recover payment of benefits under a disability policy issued by The Paul Revere Life Insurance Company, based upon a claim he submitted in 2005. He asserts this claim even though this dispute has been the subject of prior litigation among these same parties and even though such litigation ended in a signed Settlement Agreement and General Release in 2000. Pursuant to the terms of that Agreement, and in return for the payment of a sum of money, Vicario released any and all claims he could have made under the policy and further agreed that the subject disability policy would be null, void and of no effect, as of September 2000. Consequently, Vicario has released all rights and claims under the disability policy and has no contract on which to assert a claim for breach of contract (Count I) or bad faith (Count IV). Moreover, since Vicario cannot show reasonable or justifiable reliance on any actions by Defendants after he executed the General Release, he cannot recover for reliance (Count II) or estoppel (Count III). Based upon these

grounds, Defendants have moved to dismiss the plaintiff's Complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. Pro. 12(b)(6). Defendants submit this memorandum in support of their motion to dismiss.

## STATEMENT OF FACTS

In 1990, defendant The Paul Revere Life Insurance Company ("Paul Revere")[1] issued disability income policy no. 01024443730 ("the Policy") to plaintiff Frederick V. Vicario ("Vicario"). (Complaint ¶7). In 1996, Vicario made a claim for benefits under the Policy. When Paul Revere determined that Vicario did not qualify for benefits under the terms and conditions of the Policy, Vicario filed suit. (Complaint ¶10-12). The case settled and as part of that settlement, Vicario executed a written Settlement Agreement and General Release. (Complaint ¶13-14, Exhibit B). As part of that Agreement, Defendants paid Vicario an agreed upon sum of money.

In exchange for the settlement payment of $80,000, Vicario agreed to return the Policy to Paul Revere, and give up all claims and rights under the Policy (Complaint Exhibit B). Specifically, in the General Release, Vicario agreed to:

> "Release and forever quit-claim unto UnumProvident Corporation, Provident Companies, Inc., and the Paul Revere Life Insurance Company . . . any and all manners of action, causes of action, debts, claims, and demands, both in law and in equity against Releasees which [Vicario] ever had, now has, or in the future may have, up to and beyond the date of the signing of this General Release, which shall include any and all claims as to benefits, now or in the future under . . . [the Policy], including without limitation any claims for bad faith."
>
> "In connection with the signing of this General Release and as a prerequisite of the receipt of payment hereunder, [Vicario] agrees to return [the Policy] and by such tender of the [Policy] agrees that the [Policy] shall be null and void and of no further effect in the future.

---

[1] UnumProvident is the indirect parent of Paul Revere. Defendants will be referred to in this Memorandum collectively as "Paul Revere."

> "[Vicario] indemnifies and holds Releasees harmless from and against any claims or demand under [the Policy] from any person claiming any disability benefit thereunder on Vicario's behalf."
>
> "[Vicario] agrees that he shall not apply for any insurance policy or rider from UnumProvident at any time in the future, and if he shall do so, UnumProvident shall be able to reject his application for insurance without any liability resulting from such denial."
>
> "[Vicario] acknowledges that he has consulted with legal counsel in connection with the settlement of his claims under [the Policy] and that he has been informed that he is giving up whatever rights he may have, if any, under the Policy, now or in the future as a result of his signing of this General Release and dismissal of his lawsuit with prejudice."

Vicario signed the General Release on September 18, 2000 and received the $80,000 settlement payment. Vicario did not physically return the Policy. (Complaint ¶18) and Paul Revere inadvertently continued to bill premium on the Policy after it had paid Vicario pursuant to the signed General Release. (Complaint Exhibit G). In addition, contrary to the requirements of the General Release, Vicario requested enhancements to the Policy, which Paul Revere mistakenly provided. (Complaint, Exhibit C).

Notwithstanding receipt of the settlement payment and despite the provisions of the General Release, in 2005 Vicario submitted a claim for disability benefits under the Policy. (Complaint ¶23). When Paul Revere determined that premium had been inadvertently billed on the Policy, Paul Revere refunded all premium paid on the Policy since 2000, together with interest. (Complaint, Exhibit G, p.1-2). Paul Revere informed Vicario that because he had surrendered the Policy by signing the General Release, Vicario no longer had a policy on which to submit a claim. (Complaint Exhibit G).

## ARGUMENT

The Complaint Fails To State A Claim Upon Which Relief Can Be Granted.

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must accept all the well-pleaded factual allegations as true and must draw all reasonable inferences favorable to the plaintiff, but need not credit bald assertions or legal conclusions. The motion should be granted when it is clear that the plaintiff would not be able to prove any set of facts that would entitle him to relief. Gray v. Derderian, 389 F. Supp.2d 308, 311-312 (D. RI. 2005). "Nonetheless, minimal requirements are not tantamount to non-existent requirements. The threshold may be low, but it is real, and it is the plaintiff's burden to take the steps which bring this case safely into the next phase of litigation. The Court need not conjure up unpled allegations or contrive elaborately arcane scripts . . ." in order for the plaintiff to survive a Rule 12(b)(6) motion. Id. citing Gooley v. Mobil Oil Corp., 351 F.2d 513, 514 (1st Cir. 1988). As discussed below, the Complaint fails to meet this standard and should be dismissed pursuant to Fed. R. Civ. Pro. 12(b)(6).

A. Where Plaintiff Has Released All Claims Under The Policy And Has Further Agreed That The Policy Is Null And Void As Of September 2000, He Does Not Have An Enforceable Contract On Which To Assert A Claim For Breach Of Contract (Count I) Or Bad Faith (Count IV).

In Count I of the Complaint, Vicario seeks to "double dip" – in other words, to keep the payment he received for surrender of the Policy and yet to recover for breach of contract, alleging that "the defendant has materially breached the terms of the Policy." (Complaint ¶28). To prevail on this breach of contract claim, Vicario must prove that the Policy remained an enforceable contract after he signed the General Release. See Petrarca v. Fidelity & Casualty Ins. Co., 884 A.2d 406 (R.I. 2005)(a breach of contract claim requires the plaintiff to prove the existence of a contract).

The General Release is a binding contract. Gugliemi v. Rhode Island Hospital Trust, 573 A.2d 687, 689 (R.I. 1990). It was supported by consideration, signed by Vicario, the president of a manufacturing company,[2] with representation of counsel, who according to the General Release advised him that he was giving up all rights under the Policy by signing the General Release. "The element of stability necessary to support the settlement of controversies requires that we give significant deference to the terms of a general release until we have been furnished with adequate reasons to do otherwise." Id.

Here, because Vicario relinquished all rights and claims under the Policy in 2000 when he signed the General Release, he no longer had a contract on which to submit a claim in 2005. In the General Release, in exchange for $80,000 Vicario agreed that he:

- Released any and all claims both in law and in equity which he ever had, now had, or in the future may have, which shall include all claims for any benefit, now or in the future, under the Policy.
- As a prerequisite to the receipt of the settlement payment, Vicario agreed to return the Policy to Paul Revere, and that it shall be null, void, and of no further effect in the future.
- Had consulted with legal counsel in connection with the settlement of his claims under the Policy, and has been informed that he is giving up whatever rights he may have under the Policy now or in the future upon the signing of this General Release and dismissal of his lawsuit with prejudice.

The clear and unambiguous language of the General Release establishes that when Vicario signed this release and accepted the $80,000 settlement, he agreed that the Policy became null and void as part of the settlement. Vicario also represented that upon the advice of legal counsel, he understood that in connection with this settlement that he was releasing all claims and all rights under the Policy, past, present, and future. The General Release is a binding

2 See Complaint ¶22. The application attached to the Policy states that Vicario was a Vice President/General Manager for the same company when he purchased the policy in 1990. Complaint Exhibit A.

contract. When he signed it in 2000, Vicario extinguished all contractual rights he had, or may have, under the Policy. He cannot assert a claim for breach of contract on claims that he has released or on a Policy that became void in 2000.

From the Complaint it appears that Vicario, despite the General Release, claims that the Policy remained in force because he did not physically return it to Paul Revere, because Paul Revere continued to bill premium and because, at his request, Paul Revere provided enhancements to the Policy. None of these claims trump the validity of the General Release so as to keep the Policy in effect as a valid contract.

In the General Release, Vicario agreed to return the Policy and that it would be null and void. It specifically states that "as a prerequisite to the receipt of payment hereunder . . . [Vicario] agrees to return [the Policy] to the defendants and by such tender of [the Policy] agrees that [the Policy] shall be null, void, and of no further effect in the future." The usual and common meaning of "prerequisite" is "something required beforehand." By this provision, in order to be entitled to receive the agreed upon consideration of $80,000, Vicario agreed to return the Policy and that it would be null, void, and of no effect in the future. Smart v. Gillette Co. Long-Term Disability Plan, 70 F.3d 173, 178 (1st Cir. 1995)(unambiguous contracts must be construed according to their plain and natural meaning). The Policy became null and void when Vicario signed the general Release and accepted the settlement payment. To say that the Policy remained in force because Vicario kept it in his physical possession is contrary to the express language of the General Release. The General Release cannot be interpreted to permit Vicario to accept a settlement of $80,000 in exchange for his agreement that the Policy will be void and of no effect in the future, but then later claim that because he kept it in his possession that it remained in force. Similarly, Vicario cannot on the one hand agree to release all of his rights and

claims, past, present and future, under the Policy, but then on the other hand later claim that he because he kept physical possession of the Policy that it remains in effect and he can submit additional claims in the future. Id. See also Wickman v. Northwestern Nat. Ins. Co., 908 F.2d 1077, 1084 (1st Cir. 1990)(contracts should not be interpreted such that inconsistencies result). Not only is this inconsistent with the unambiguous language of the General Release, but it also results in a windfall for Vicario where he tries to pocket an $80,000 settlement in consideration for the return of the Policy and release of all claims, but then because he never physically returned it, he gets to recover again when he later submits a claim. However, the issue of whether the Policy was actually returned is of no consequence in light of the clear language whereby Vicario agrees that the Policy is void and of no effect as of September 2000. In other words, regardless of whether Vicario actually returned the Policy, there is no doubt that by signing the General Release after consulting with an attorney, and accepting the $80,000, Vicario released all rights and claims under the Policy. Thus, the Policy was not in effect in 2005 when he submitted the claim at issue in this case.

Rather than serve as a cause of action upon which relief can be granted, Vicario's actions in requesting enhancements to the null and void Policy constitute a breach of the parties Settlement Agreement and General Release. In this regard, Vicario agreed that he "shall not apply for any insurance policy or rider from UnumProvident at any time in the future, and if he shall do so UnumProvident shall be entitled to reject his application for insurance without any liability resulting from such denial." He cannot now use the enhancements, which he should not have applied for in the first place, as a means to argue that the Policy remained in force after he signed the General Release.

Lastly, where the valid and enforceable General Release extinguished all of Vicario's rights under the Policy and any claims under the Policy, he cannot take advantage of subsequent inadvertent billing errors by Paul Revere as a means to get around the General Release. Indeed, knowing, after consulting with legal counsel, that he had released all rights and claims under the Policy in exchange for $80,000, Vicario could have simply discarded the premium invoices. That he instead took advantage of the billing error does not invalidate the provisions of the binding and enforceable General Release where he agreed to release all rights and claims under the Policy.

Vicario cannot make out a breach of contract claim in this case because he released all of his rights and claims under the Policy and the Policy became null and void in 2000 when he signed the General Release and accepted the settlement payment. Vicario cannot prove the existence of a valid and enforceable contract in 2005, when he submitted the claim that is the subject of the suit. As a result, Count I fails as a matter of law.

Likewise, to succeed on a common-law bad faith claim in Rhode Island, Vicario must demonstrate the absence of a reasonable basis for denying the policy benefits and that the Defendant had knowledge or recklessly disregarded the lack of a reasonable basis for denying the claim. Skaling v. Aetna Ins. Co., 799 A2d 997, 1004 (R.I. 2002). Here Vicario cannot prevail on this claim because there is a reasonable basis for Defendant to deny his claim: the Policy became null and void and of no effect in 2000 when Vicario signed the General Release and received the settlement check. He did not have an existing contract on which to submit a claim in 2005. See Zarrella, supra at 1261 (bad faith claims fail as a matter of law where reasonable basis existed to deny the claim). In addition, when Paul Revere learned that it had inadvertently billed premium on the Policy it refunded all premium paid after September 2000,

with interest, to Vicario. Thus, as a matter of law, Count IV fails to state a cause of action upon which relief can be granted.

B. Where Plaintiff Cannot Show Reasonable Or Justifiable Reliance On Subsequent Actions By Paul Revere, He Cannot State A Claim For Reliance Or Estoppel.

In Counts II and III of the Complaint, Vicario purports to assert a claim for "reliance" and "estoppel" respectively. Because in Counts II and III Vicario has failed to plead, and cannot prove a claim for justifiable reliance,[3] or equitable estoppel, these Counts must be dismissed.

The doctrine of estoppel is an equitable doctrine that will operate to bar a person from denying liability when the party makes a promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance, and injustice can be avoided only by enforcement of the promise. Zarrella v. Minn. Mutual Life Ins. Co., 824 A.2d 1249, 1260 (R.I. 2003). In the context of insurance coverage, the insured must show (1) that he was misled by the acts or statements of the insurer or his agent; (2) reliance by the insured on those representations; (3) that such reliance was reasonable; and (4) detriment or prejudice suffered by the insured based on the reliance. Id.

Vicario has not properly pled a claim for estoppel or reliance. In Counts II and III, he only claims that he "justifiably relied to his detriment on the actions of the defendants." Complaint ¶30) and that under a "theory of estoppel" the defendants are "estopped from asserting a defense of release or surrender of the Policy." (Complaint ¶32). No where does Vicario allege that, despite the unambiguous language of the General Release and the fact that he received a settlement payment that bought back the Policy, that he was misled by the subsequent

[3] The allegations in Count II are so vague that the defendants presume that plaintiff intends to assert some type of misrepresentation claim based on justifiable reliance, but this cannot be discerned from the allegations made in this Count of the Complaint.

actions of the defendants; that he relied on them; that his reliance was reasonable; or that he has been prejudiced because of this reliance. When considering a Rule 12(b)(6) motion to dismiss, this Court need not credit the conclusory statements found in paragraphs 30 and 32 of the Complaint, which are insufficient to properly plead the claims purportedly asserted in Counts II or III.

Not only has Vicario failed to plead a claim for estoppel, but he also cannot prove a claim for estoppel or reliance given the facts alleged in his Complaint. Vicario cannot prove that he was misled by the defendants' actions, or that his reliance, if any, was reasonable or justifiable as a matter of law.

In the General Release, Vicario, represented by counsel, agreed that in exchange for a payment of $80,000 that he:

- released any and all claims both in law and equity which he ever had, now has, or in the future may have, which shall include any and all claims as to benefits now or in the future under the Policy.
- as a prerequisite for receipt of settlement payment he shall return the Policy and that it shall be null and void and of no further effect in the future.
- has consulted with legal counsel and has been informed that he is giving up whatever rights he has under the Policy now or in the future as a result of signing this General Release.

Paul Revere's subsequent actions whereby it billed premium and processed Vicario's request for enhancements, could not have misled Vicario into reasonably believing that his Policy remained in effect. He knew, having consulted with legal counsel, that as to the Policy he was releasing all claims, giving up all rights, and that receipt of the $80,000 settlement payment was in exchange for that complete release and return of the Policy. Given the language of the release, the only reasonable conclusion to be drawn when Vicario received premium notices from Paul Revere was that they were sent in error.

From the Complaint, it appears that Vicario, despite the General Release and his receipt of the $80,000 settlement, tries to assert that his Policy remained in force because he did not physically return it to Paul Revere. (Complaint ¶25). This assertion ignores the plain and unambiguous language of the General Release whereby Vicario acknowledges that the Policy is null and void as of September 2000. Likewise, whether Vicario deliberately or inadvertently failed to return the Policy was deliberate is immaterial.[4] He cannot now say he was "misled" by Paul Revere's subsequent billing because he knew the Policy should have been returned, but he did not do so.

Even if Vicario can prove that he was misled and relied upon Paul Revere's subsequent actions, he cannot prove as a matter of law that his reliance was reasonable. It is not reasonable for Vicario to rely on Paul Revere's subsequent billing in order to believe that the Policy remained in effect, when that is completely contrary the specific written terms of the General Release where he released all claims under the Policy and agreed that the Policy would become void. When a person acts in a way that is contrary to his own acknowledged understanding of the facts, his acts must be deemed unreasonable as a matter of law. Trifiro v. New York Life Ins. Co., 845 F.2d 30, 33 (1st Cir. 1988). Reliance on a representation that conflicts with an express written statement is not reasonable. Id. As the First Circuit stated in Trifiro: "confronted by such conflict a reasonable person investigates matters further; he receives assurances before relying. A reasonable person does not gamble with the law of the suspended middle, he suspends judgment until further evidence is obtained. Explicit conflict engenders doubt, and to rely on a statement the veracity of which one should doubt, is unreasonable." Id.

---

[4] Indeed, Vicario attempts to excuse his conduct by blaming his failure to return the Policy on Paul Revere and its attorney. (See ¶16 and ¶17 where Vicario claims that neither the defendants nor its lawyer requested return of the Policy). The General Release requires Vicario to return the Policy, not at anyone's request, but as a prerequisite to obtaining the settlement payment.

Likewise, reliance is not justifiable when the falsity of a statement should be obvious or where the complainant is aware of inconsistencies between the facts and the defendants' representations. Fleet National Bank v. Anchor Media Television, 831 F.Supp. 16, 41-42 (D.R.I. 1993)(faced with explicit discrepancies in contract documentation claimant had a duty to investigate further and where it failed to do so, reliance was not justified); Kelly v. Tillotson-Pearson, Inc., 840 F.Supp. 935, 941-944 (D. R.I. 1994)(where representations conflict with written agreement, reliance on the representations is not justifiable); Kennedy v. Josephthal & Co. Inc., 814 F.2d 798, 805 (1st Cir. 1987)(when plaintiffs closed their eyes and passively accepted the contradictions between oral statements and a written memorandum, reliance was not justified as a matter of law).

After he signed the General Release Vicario was faced with a conflict between the written statements in the General Release and Paul Revere's subsequent conduct when it continued to bill premium on the Policy. Faced with this conflict, Vicario was on notice that Paul Revere had not yet processed the surrender of the Policy. In light of this information, Vicario's choice to simply rely on the premium billing as proof that the Policy remained in effect, in direct contradiction to the express written General Release that he signed, establishes as a matter of law that his alleged reliance was neither reasonable nor justified.

Lastly, courts may not invoke the doctrine of equitable estoppel to expand the scope of coverage of an insurance policy. Zarrella supra at 1260. Quasi contractual remedies such as equitable estoppel are inapplicable when parties are bound by an express contract. Id. Here, Vicario attempts to use equitable estoppel to expand the scope of the Policy by keeping it in force after he signed the General Release. Indeed, if an argument of equity is to be made, it should be resolved in Defendants' favor. Defendants paid Vicario for the settlement and

surrender of the Policy, returned all premium payments (plus interest) when it learned of the billing error and yet Vicario seeks to take advantage of the situation and "double dip." Regardless of whether Vicario returned the Policy, when he signed the General Release and accepted the $80,000 settlement he agreed to give up all claims and all rights, past, present and future, under the Policy. Vicario cannot use equitable estoppel to keep the Policy in effect when he agreed to surrender the Policy and relinquish all future rights under the Policy. Here, the General Release is an express contract between the parties, and equitable estoppel is inapplicable.

## CONCLUSION

For each of the foregoing reasons, the defendants Rule 12(b)(6) motion to dismiss should be allowed.

UNUMPROVIDENT CORPORATION,
AND THE PAUL REVERE LIFE
INSURANCE COMPANY

By their attorneys,

Joan O. Vorster, Esq.
#5784
Mirick, O'Connell, DeMallie & Lougee, LLP
100 Front Street
Worcester, MA 01608-1477
Phone: (508) 791-8500
Fax: (508) 791-8502

Richard E. Kirby, Esq.
RI #3780
Macktaz, Keefer & Kirby
The Aldrich Building
72 Pine Street
Providence, RI 02903
Phone: (401) 272-5300
Fax: (401) 331-7454

(JOV)

Dated: 12·19·05

## CERTIFICATE OF SERVICE

I, Joan O. Vorster, hereby certify that I have this day served a copy of the foregoing document, by mailing a copy, first class mail, postage prepaid, to J. Scott Kilpatrick, Chisholm, Chisholm & Kilpatrick. LLP, One Turks Head Place, Suite 1313, Providence, RI 02903.

Joan O. Vorster, Esq.

Dated: 12·19·05