UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| FREDERICK V. VICARIO<br><br>Plaintiff,<br><br>vs.<br><br>UNUMPROVIDENT CORPORATION, and PAUL REVERE LIFE INSURANCE COMPANY,<br><br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | Civil Action: CA 05-469 T |

**REVISED MEMORANDUM IN SUPPORT OF PLAINTIFF'S OBJECTION TO RULE 12(b)(6) MOTION**

(With edits noted in bold italic underscoring)

## I. INTRODUCTION

Plaintiff, Frederick V. Vicario, ("Plaintiff", "Mr. Vicario") submits that the Defendants', UnumProvident Corporation and Paul Revere Life Insurance Company (collectively referred to as "Defendants")**,** Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim, should be treated as one for Summary Judgment and discovery should proceed accordingly. Alternatively, the Motion should be denied as there are allegations set forth in the Complaint which support reasonable inferences that: (a) the Policy remained in effect after the settlement agreement was signed as a result of Defendants' waiver; (b) the Defendants' are barred from asserting the defense of release or accord and satisfaction, or similar defenses, as a result of estoppel; (c) the Defendants conduct in denying the Plaintiffs claim was ***not*** supported by reasonable basis, and was otherwise ***not*** in compliance with *Skaling v. Aetna Ins. Co*, 799 A.2d 997, 1004 (R.I. 2002).

## II. BACKGROUND AND FACTS

Plaintiff, is presently the owner of an Italian food product importing, packaging and distribution business, Unita Packing, Inc., known in stores as Barbera®. For generations, Unita has been a Rhode Island family business. As alleged in the Complaint, Plaintiff has had a disability policy with defendant Paul Revere Life Insurance Company ("Paul Revere") since May, 1990 (Policy Number 01024443730), attached as Exhibit A to Complaint.

On or about December 19, 1996, after having become disabled under the policy, Plaintiff was forced to abandon his managerial duties with the company, and worked less than full time doing physical labor. He made a claim for benefits under the Paul Revere Policy, which was denied. Plaintiff filed suit. Throughout the litigation, Paul Revere continued to bill, and the Plaintiff continued to pay, premiums on the Policy. Paul Revere paid itself by automatic deductions directly from the Plaintiff's bank account. Three (3) years and nine (9) months after filing his claim, Paul Revere settled with the Plaintiff, resulting in dismissal of the litigation. The case settled for $80,000.00 which was equal to approximately eighteen (18) months of back benefits.

A release was presented by counsel for Paul Revere, the main object of which was the payment of $80,000.00 and dismissal of the law suit. The Release also included a condition that Plaintiff agree "to ***return the Disability Insurance Policy*** to [Paul Revere], and ***by such tender of the Disability Policy*** agrees that the Disability Insurance Policy shall be null and void and of no further effect." See Exhibit B to Complaint (emphasis added). The term in the release which required the "return" and "tender" of the policy inured solely to the benefit of the Defendants. Thereafter, neither Defendants nor their counsel took any measure whatsoever to hold Plaintiff to the additional term contained in the release. They did not request that the Policy be returned. They did not demand that the Policy be returned. They took no measure whatsoever to follow up with the Plaintiff regarding that term of the agreement. Likewise, they took no measure to

terminate or cancel coverage. On the contrary, they took measures to ensure that the coverage remained in full force and effect, including billing Plaintiff monthly and paying themselves by way of direct deductions from the Plaintiff's bank account. This continued for years.

During that time, Defendants even took measures to secure increased premiums from the Plaintiff, in exchange for coverage enhancements. This conduct continued for nearly five (5) years, and it was not until the Plaintiff sought to make a claim on his policy that Defendants sought to enforce the "return" and "tender" term of the settlement agreement.

With respect to the premium increases and coverage enhancements, Defendants allege that Plaintiff breached the provisions of the settlement agreement by requesting enhancements to the coverage. Defendants' Memorandum, p. 7. Defendants introduce this disputed fact into the analysis. The Complaint does not allege that Plaintiff requested enhancements to the coverage. Rather the Complaint alleges that "Defendants solicited Plaintiff to further 'enhance' his coverage under the Policy, which he agreed to do." See Complaint, para. 20. In response to Defendants' assertion in this regard, attached is an example of the letters that Plaintiff received periodically, after the settlement, from Paul Revere. See, for example, two letters from Defendants dated April 3, 2002 and April 5, 2004, attached at Tab A. Toward the end of the first paragraph, Paul Revere writes to the Plaintiff "[t]he Paul Revere Life Insurance Company is ***pleased to make you this offer*** under your policy's Future Income Option." Tab A (emphasis added). Accepting the offer would mean that Mr. Vicario's premiums would be increased, and they were. Contrary to Defendants' allegation that he breached the terms of the release by "requesting enhancements to the null and void Policy," Plaintiff merely responded to Defendants' solicitations to sell him more product. Plaintiff accepted some of these overtures, and received increased coverage and paid increased premiums, which Defendant had no difficulty deducting from his bank account. Plaintiff submits that Defendants waived the term of

the Release which required the return, and resulting cancellation, of the Policy.

When Plaintiff made a claim on the Policy, Defendants denied the claim without responding substantively to Plaintiff's arguments that the Policy was never surrendered, other than to state that the Policy was surrendered "by signing the General Release". See Defendants' letter of August 4, 2005, attached to Complaint as Exhibit G. Yet, the settlement agreement and release provides that it was to be the "return" and "tender" of the Policy that would render the Policy null and void. It would appear that Defendants failed to determine whether there was a lawful basis for the claim and, in turn, a lawful basis for denying the claim. Furthermore, in presenting his claim the Plaintiff made the same factual waiver arguments to Defendants as he makes here. However, based on Defendants' response, they appear to have failed to determine whether there was a lawful basis for considering the "return" and "tender" term of the settlement agreement to have been waived, or any otherwise legal basis to deny the claim.

## III. PLAINTIFF'S ARGUMENTS

### A. The Motion Should be Treated as one for Summary Judgment

Defendants' argument that Plaintiff requested enhancements to the Policy in violation of the release language, and Plaintiff's response, including that additional letters of April 3, 2002 and April 5, 2004, brings its Motion outside of Rule 12(b)(6) and requires conversion to a Rule 56 Motion for Summary Judgment.

Furthermore, "waiver is the voluntary, intentional relinquishment of a known right. It results from action or nonaction ....". *Sturbridge Homebuilders Inc.*, – A.2d –, (WL 3610799 (R.I. Dec. 29, 2005) (quoting *Lajayi v. Fafiyebi,* 860 A.2d 680, 687 (R.I.2004) (quoting *Haxton's of Riverside v. Windmill Realty, Inc.,* 488 A.2d 723, 725 (R.I.1985)). "The party claiming that there has been a waiver of a contractual provision has the burden of proof on that issue." *Id.*

(quoting *1800 Smith Street Associates, LP v. Gencarelli,* – A.2d – , p. 10 n. 4, 2005 WL 3501523 (R.I., Dec. 22, 2005).

To the extent that the facts set forth in the Complaint and in the additional exhibits attached hereto are insufficient to persuade the Court of the existence of a triable issue of fact regarding waiver, Plaintiff requires an opportunity to conduct discovery in order to develop the facts necessary to determine the extent to which the Defendants' actions and inactions constituted a voluntary, intentional relinquishment of a known right. Such discovery would include: the deposition of Defendants' attorney who negotiated the 2000 settlement agreement; the claims representative(s) who authorized the settlement and oversaw the claim and litigation; and a Rule 30(b)(6) deposition of the person(s) knowledgeable at Defendant corporations regarding the settlement, the terms of the release, the requirement of surrendering the policy, the failure to require surrender of the policy, the failure to cancel coverage, the continued billing and collecting of premiums from the Plaintiff, the solicitation of enhanced coverage and corresponding increased premiums, and the eventual determination to cancel coverage. To the extent that the issue of waiver is not sufficiently established on the present record, it would only be through such discovery, that Plaintiff could establish the extent to which, by action or inaction, Defendants voluntarily, and intentionally relinquished a known right.

Accordingly, Plaintiff seeks to convert this motion to a Motion for Summary Judgment pursuant to Rule 56, and conduct discovery sufficient to provide the Court with necessary facts to decide whether the Plaintiff's suit may continue.

### B. Facts and Allegations are Sufficient to Establish Defendants' Waiver of "Return" and "Tender" term of Settlement Agreement and Release

"A party's actions can resolve the question of whether he or she has knowledge of the right waived and whether the waiver was voluntary. As a general rule, the question of whether a

party has voluntarily relinquished a known right is one of fact for a jury." *Haxton's*, 488 A.2d at 725-726(citing *Doujotos v. Leventhal,* 271 Mass. 280, 283, 171 N.E. 445, 446 (1930).

In *Safeway System, Inc. v. Manuel Bros., Inc*, 102 R.I. 136, 228 A.2d 851 (1967), the Rhode Island Supreme Court discussed the doctrine of waiver. In that case, the conduct of the buyer in pursuing a closing date even after the date specified in the buy and sell agreement and notwithstanding a clause relieving the buyer of its obligations thereunder was tantamount to a waiver. Id. at 140, 853-54. Similarly, the Rhode Island Supreme Court has held that a party for whose benefit a right is provided by agreement may waive such right ***by conduct*** inconsistent with the express terms of the agreement. *See Hattie Carnegie Industries, Inc. v. Lopreato,* 114 R.I. 319, 327-28, 333 A.2d 145, 150 (1975). Such "conduct" can be from action or inaction. *Lajayi v. Fafiyebi,* 860 A.2d at 687. Waiver applies equally to an agreement term that is a condition precedent. *Id.* at 686.

The Rhode Island Supreme Court has considered waiver ~~***in the***~~ in the context of a contract ***for*** lease of real estate, and recognized that the mere acceptance of rent after default constitutes a waiver of the default. *Lenzini v. Gianetti,* 49 R.I. 174, 180, 142 A. 139, 141 (1928); *Cavanaugh v. Cook,* 38 R.I. 25, 29, 94 A. 663, 664 (1915). Indeed, "[a] forfeited lease may be revived by waiver even after entry for forfeiture." *Lenzini v. Gianetti,* 49 R.I. at 177, 142 A. at 140. "An implied waiver may arise where a person against whom the waiver is asserted has pursued such a course of conduct as to sufficiently evidence an intention to waive a right or where his conduct is inconsistent with any other intention than to waive it." *Sturbridge,* – A.2d at 5.

Likewise, in an ERISA governed life policy case, where evidence of good health was a condition precedent to issuance of the policy, it was held that the condition could be waived. See e.g., *Gaines v. Sargent,* 329 F. Supp.2d. 1198, 1222 (C.D. Calif. 2004). In *Gaines v. Sargent*, the

Court recognized that waiver required the Plaintiff to show that the Defendant insurer voluntarily relinquished a known right, and toward that end, the Court said: "Hartford knew that Plaintiff (and indeed many others) had not submitted a personal health statement, knew of the coverage being purchased, knew that premiums were being paid for that-coverage, and received and accepted payments without giving any indication that any of the Sargent Fletcher employees had failed to comply with a precondition to obtaining insurance coverage." Notwithstanding the presumption against applying waiver to expand benefits under an ERISA Plan, the Court did not excuse Hartford's inadvertence and found waiver applicable where it provided the Plaintiff with a valuable benefit for which he had paid. *Id.*

In the present case, the Defendants' conduct begins with inaction, as Defendants and their representatives took no action whatsoever to follow through with respect to the term which they now seek to enforce. Inaction alone would be sufficient to render the term waived, and the policy in full force and effect. In this case, the evidence of inaction resulting in waiver includes: (a) the Defendants' attorney never followed through regarding the requirement of re-tendering the Policy; (b) the representative of Defendants to whom their attorney reported, and who presumably oversaw the claim and litigation, never sought the return of the policy and apparently ~~and~~ never followed up in any way regarding fulfillment of the re-tender term of the release; and (c) the representative for Defendants' never took any action to cancel coverage.[1]

The evidence then continues with actions by Defendants demonstrating waiver, including: (d) the Defendants continued to bill the Plaintiff and paid themselves monthly premiums by

[1]Defendants contend that the return or tender of the Policy is inconsequential to the cancellation of coverage and the purported invalidity of the policy following the signing of the release. See Defendants' Memorandum at Page 5 ("Here, because Vicario relinquished all rights and claims under the Policy in 2000 when he signed the General Release, he no longer had a contract on which to submit a claim in 2005." Yet, if this is so, then nothing should have prevented Defendants from cancelling the coverage. In other words, Defendants cannot argue that they were awaiting the return of the Policy to trigger measures to cancel the Policy.

accessing the Plaintiff's bank account and deducting the money; (e) at times, the Defendants solicited what it called coverage enhancements, but which from Defendants' perspective were premium enhancements, some of which Plaintiff accepted; (f) thereafter, Defendants billed Plaintiff higher premiums and continued to access Plaintiff's account and pay themselves monthly; (g) it was not until Plaintiff became disabled and made a claim on his Policy, that Defendants took any measure to cancel the Policy.

Under the facts as plead and set forth in this record, the Defendants waived the requirement that Plaintiff return the Policy, and thereby waived the term deeming the otherwise non-cancellable policy, null and void. The Policy remained in full force and effect.

### C. Defendants Attempt to Deem the Policy Null and Void as of the Date of the Settlement Agreement reads Ambiguity into the Agreement which must be construed Against Defendants

As set forth above, the term that Defendants now seek to enforce against the Plaintiff required a "return" and "tender" of the policy, and only by such a physical surrender would the policy become null and void. The release, which was written by the Defendant, or its attorney, did not provide that the policy was deemed surrendered. The release did not provide that the policy was deemed null and void. Plaintiff submits that the language is clear and unambiguous in that it required the Plaintiff to return the release and only by such tender would the policy become null and void. To the extent that there is any ambiguity, the ambiguity should be resolved against the drafter of the document, the Defendants. See *Rhode Island Hosp. Trust Nat. Bank v. McKee Bros. Oil Corp.*, 649 A.2d 511 (R.I. 1994). The fact that the policy was not cancelled, is evidence of the intent and effect of the "return" and "tender" term as triggering language, the non-satisfaction of which would result in the Policy continuing in effect.

Defendants argue that the "prerequisite" language applied to the release itself, in that in order to receive payment, Plaintiff had to sign the release and thereby agree to return the policy.

Defendants' Memorandum, p. 6-7. First, a condition precedent can be waived as effectively as a condition subsequent. See e.g., *Lajayi v. Fafiyebi,* 860 A.2d at 686. However, at best for Defendants, and even if the "prerequisite" language is applied to the requirement that Plaintiff "agree" to return and tender the Policy, distinct from the action of "return" and "tender", such interpretation would render the agreement ambiguous. If that is the Defendants' argument, then the language of the release in that regard is susceptible to two different interpretations – the first being, that by signing the release, Plaintiff was agreeing to return the policy and that by so agreeing, the policies were null and void;[2] and the second being, that the Plaintiff agreed to return the policy, and upon such re-tender the policy would become null and void.[3]

To the extent that the language of the release is ambiguous, it must be construed in favor of the Plaintiff. See *Mallane v. Holyoke Mut. Ins.*, 658 A.2d 18, 20 (R.I. 1995). Accordingly, the release cannot be construed to mean what the Defendants argue – that the policy became null and void upon the signing of the release. Rather, the release must be construed in the Plaintiff's favor, to include a term requir***ing*** the Plaintiff to return the policy and that once that occurred the policy would cease to exist. Likewise, to the extent that the settlement agreement and release can be interpreted to release Defendants from future claims, such would be inapposite to the "return" and "tender" terms, which clearly set forth mechanism by which the Policy will be deemed null

2

Clearly, this is one meaning argued by the Defendants as they argue "The Policy became null and void when Vicario signed the general Release and accepted settlement payment." Defendants' Memorandum, p. 6.

3

The release in this regard speaks in the future tense, and states that "Releasor agrees to return the Disability Policy to Releasees...". This language anticipates a future act, and a requirement that inures solely to the benefit of the Defendants. The release further states, "... and by such tender of the Disability Policy agrees that the Disability Policy shall be null and void and of no further effect...". Again, the language of the release anticipates termination of the policy in the future, triggered by its return to the Defendants.

and void, and the waiver of which resulted in the Policy remaining in full force and effect. Again, such ambiguity must be construed against the Defendants. *Mallane*, 658 A.2d at 20.

## D. The Complaint makes out a Claim for Reliance and Estoppel

The Complaint clearly alleges that the Plaintiff relied to his detriment on the actions of the Defendants. Complaint, para. 30. Under ***the*** Rule 8(a), the rules of notice pleading apply to determinations under Rule 12(b)(6), and the Plaintiff has plead substantial facts and has alleged that he relied to his detriment. See *Educadores v. Hernandez*, 367 F.3d 61, 66 (1st Cir. 2004). Perhaps discovery will show that alternative coverage was unavailable to Plaintiff, such that he could not have been harmed by relying on his belief that he had coverage for the nearly five (5) years. Perhaps discovery will reveal that alternative coverage, with another carrier, would have been available, ha***d*** Defendants sought to cancel the coverage contemporaneous with the settlement. In such case, Plaintiff would clearly have been prejudiced by relying on Defendants action and inactions. These may be appropriate issues for summary judgment at the appropriate time, but where the facts have been plead, all reasonable inferences must be made on behalf of the Plaintiff.

## E. Evidence in the Record Demonstrates Defendants' Bad Faith under Rhode Island Law

Defendants accuse the Plaintiff of attempting to "double dip", by keeping the payment he received in settlement and making a claim now for benefits. This characterization of the Plaintiff disregards the fact the that Plaintiff was legitimately disabled in 1996 when he made the earlier claim. It disregards the fact that, rather than pay the claim, Paul Revere denied it and engaged the Plaintiff in more than three (3) years of litigation. When Defendant settled, it paid the

Plaintiff what appears to be a fraction of the accrued past due benefits for that claim alone, not counting attorneys fees, and expenses. Defendant then collected nearly five (5) more years of premiums before denying this claim, on the grounds that the Policy did not exist. There is no double dipping taking place here, and query, how did Defendants collect premiums for years on a Policy that did not exist? How did they solicit enhancements on a Policy that did not exist? Rather, it is the Defendants' conduct that is lacks good faith this case.

The Plaintiff made a legitimate claim, including detailed arguments regarding the applicability of the release, only to be met with perfunctory response by Defendant. Defendants represent to this Court that in order to establish a bad faith claim under Rhode Island law, it must prove "the absence of a reasonable basis for denying the policy benefits ***and*** that the Defendant had knowledge or recklessly disregarded the lack of a reasonable basis for denying the claim." Defendants' Memorandum, at p. 8. (Citing, *Skaling v. Aetna Ins. Co*, 799 at 1004 (R.I. 2002))(emphasis added). This is not accurate.

To begin, *Skaling* does not require the Plaintiff to show an absence of reasonable basis ***and*** knowledge or recklessness. In fact the *Skaling* court specifically stated:

> Further, in situations in which the claim is fairly debatable, we are asked to determine whether liability may be imposed in situations in which the carrier intentionally or recklessly failed to properly investigate a claim, or failed to subject its investigation to an appropriate cognitive evaluation and review, or otherwise acted in an oppressive and unreasonable manner. We answer this question in the affirmative.

*Skaling*, at 1006 (emphasis added). Defendant cites to page 1004 of the decision which sets forth, by way of background, the history of bad faith law in Rhode Island. This historical rule was effectively overturned and expanded in *Skaling*. *Skaling* broadened the scope of bad faith liability in Rhode Island, and specifically provided that, in addition to the above cited grounds for a claim, bad faith could be proven by showing that the carrier "either intentionally or recklessly

failed to properly investigate the claim or to subject the results of the investigation to a cognitive evaluation and review." *Id.* at 1011. This language is included in the Plaintiff's Complaint, see para. 34-36. Further, *Skaling* requires that "consistent with its obligations of good faith and fair dealing, an insurer is nonetheless obliged to engage in settlement discussions in an effort to relieve the insured from the burden and expense of litigation." *Id.* This language is also included in Plaintiff's complaint. See Complaint, para. 38-39. "One of the tests of insurer good faith is whether the insurer was reasonable in both its investigation of the claim and in its settlement behavior." *Id.* at 1011-1012.

In this case, the Plaintiff made a claim for benefits under a Policy for which he had paid premiums for approximately fifteen (15) years, in total. His claim was denied solely on the ground that the Policy ceased to exist on September 18, 2000, when he had signed the settlement agreement on an earlier claim. See Defendants' letter dated August 4, 2005, attached to the Complaint as <u>Exhibit G</u>. Plaintiff had set forth in some detail the factual support for his argument that the "return" and "tender" terms of the agreement had been waived, and that the policy had remained in full force and effect. These arguments remained essentially unanswered, and it is apparent that the Defendants did not investigate or research the validity of Plaintiff's argument and claim. If it had, then it would have considered, in a manner consistent with its obligation of good faith toward its insured, that the Plaintiff had compelling arguments and that the claim deserved consideration. Instead, the Defendants utterly failed "to determine whether there [was] a lawful basis to deny the claim." *Id.* at 1011. Such conduct "standing alone, is bad faith." *Id.*

Moreover, given that a reasonable investigation would have revealed to the Defendants the merits of the Plaintiff's position, it would have had an obligation to engage in settlement discussions with the Plaintiff in an effort to relieve him from the burden and expense of

litigation. *Id.* The Defendants' conduct in responding to Plaintiff's claim is in stark contrast with the requirement of *Skaling*, and as such constitute actionable bad faith under Rhode Island law.

## CONCLUSION

Based on the above facts and arguments, and those to be presented at the hearing on this matter, Plaintiff respectfully requests that the Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) be treated as one for Summary Judgment. In the alternative, Plaintiff submits that the Motion should be denied based on the allegations set forth in the Complaint. In the event that the Motion is treated as one for Summary Judgment, Plaintiff anticipates conducting relevant discovery as set forth above and filing a cross-motion for Summary Judgment on one or more of the issues raised by Defendants.

Respectfully Submitted,

Plaintiff,
By His Attorneys,
CHISHOLM CHISHOLM & KILPATRICK, LLP

By______________________________

J. SCOTT KILPATRICK #4036
One Turks Head Place
Suite 1313
Providence, Rhode Island 02903
(401) 331-6300 Telephone
(401) 421-3185 Facsimile

Dated: February 28, 2006